UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

BEAUX EQUITIES LLC,

                        Debtor.

------------------------------------------------------------X
POWERCAP PARTNERS LLC,

                        Plaintiff,

        -against-

BEAUX EQUITIES LLC, YAAKOV POLLAK,
MOSHE POLLAK, SHORIVGER TRUST, and
RAPHAEL GROSSMAN AS TRUSTEE OF THE
SHORIVGER TRUST,

                        Defendants.

------------------------------------------------------------X

Chapter 11 (Subchapter V)
Case No.: 25-40119-jmm

Adv. Proc. No.: 25-01037-jmm

## MEMORANDUM OF LAW ON BEHALF OF BEAUX EQUITIES LLC
### IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

**Rosen, Tsionis & Pizzo, PLLC**
*f/k/a* **Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Daniel J. LeBrun, Esq.

*Counsel for the Debtor and Cross-Claim Plaintiff,*
*Beaux Equities LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    **I.**        **THE SUMMARY JUDGMENT STANDARD** . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    **II.**      **THE DEBTOR IS ENTITLED TO SUMMARY JUDGMENT ON ITS FIRST CROSS-CLAIM DECLARING THE SHORIVER LOANS USURIOUS AND UNENFORCEABLE AGAINST THE DEBTOR.** . . . . . . . . . . . . . . . . . . 8

            A.      The Iska Notes Were Loans and Subject to Usury Laws . . . . . . . . .8

            B.      The Shorivger Loans Charged Interest Rates in Excess of New York's Criminal Usury Rate. . . . . . . . . . . . . . . . . . 11

    **III.**     **THE DEBTOR IS ENTITLED TO SUMMARY JUDGMENT ON ITS SECOND CROSS-CLAIM DECLARING THE DEED TO SHORIVGER IS A MORTGAGE, AND FINDING THAT MORTGAGE IS UNENFORCEABLE AGAINST THE DEBTOR AS IT WAS TAKEN AS SECURITY FOR THE SHORIVGER LOANS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

# TABLE OF AUTHORITIES

## CASES

*Adar Bays, LLC v. GeneSYS ID, Inc.,* 2021 NY Slip Op 05616, 37 N.Y.3d 320 (N.Y. 2021) .... 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) ............................................. 10, 11

*Arnav Indus., Inc. v. Westside Realty Assocs.,* 180 A.D.2d 463 (App. Div. 1st Dept. 1992)....... 12

*Band Realty Co. v. N. Brewster, Inc.,* 37 N.Y.2d 460 (N.Y. 1975) ...................................... 16, 19

*Basile v. Erhal Holding Corp.*, 148 A.D.2d 484 (N.Y. App. Div. 2d Dep't 1989)....................... 21

*Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM) (RER), 2010 U.S. Dist. LEXIS 140905
    (E.D.N.Y. Mar. 31, 2010) ..................................................................................................... 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 10

*Coronet Capital Co. v. Spodek*, 265 A.D.2d 292 (App. Div. 2nd Dept. 1999) ........................... 23

*Cruisephone, Inc. v. Cruise Ships Catering & Servs. N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325
    (Bankr. E.D.N.Y. 2002) ....................................................................................................... 18

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,* 652 F. Supp. 101 (E.D.N.Y. 1986)....... 17, 19

*Edge Capital, LLC v. JA Funding, Inc. (In re 364 N.B.E. Corp.),* Nos. 13-46771 (NHL), 13-
    01517 (NHL), 2015 Bankr. LEXIS 4367 (Bankr. E.D.N.Y. Dec. 29, 2015)........................... 21

*Flores v. United States*, 885 F.3d 119 (2d Cir. 2018)................................................................... 11

*In re Mechanics' Bank*, 156 A.D. 343 (App. Div. 2nd Dept. 1913) ............................................ 22

*In re Venture Mortg. Fund, L.P.*, 245 B.R. 460 (Bankr. S.D.N.Y. 2000) ................................... 19

*K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 2017 NY Slip Op 27166, 56 Misc. 3d 807 (Sup.
    Ct.) ..................................................................................................................................... 17

*Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55 (2d Cir. 1994)............................ 3

*Langenkamp v. Culp,* 498 U.S. 42 (1990)................................................................................... 18

*Leibovici v. Rawicki,* 57 Misc. 2d 141 (Civ. Ct. 1968)................................................................ 12

*Leonia Bank v. Kouri*, 3 A.D.3d 213 (N.Y. App. Div. 1st Dep't 2004)....................................... 21

*Madison Park Inv'rs LLC v. 488-486 Lefferts LLC*, 2015 NY Slip Op 30178(U) (Sup. Ct.)....... 12

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002) .......................................... 10, 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).................................. 10

*Muller v. Wertzberger,* 2013 NY Slip Op 50915(U), 39 Misc. 3d 1237(A) (Sup. Ct.) ................ 12

*Richmond Hospitality LLC v. Shaugnessy Capital LLC (In re Richmond Hospitality LLC)*, Adv.
    Proc. No. 24-01057-jmm, Dkt. No. 15 (Bankr. EDNY January 14, 2025) ............................. 17

iii

*Samson Lending LLC v. Greenfield Mgmt. LLC*, 80 Misc. 3d 1023 (Sup. Ct. 2023)................... 16

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962).................................................................... 10

*United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020) .................................................................. 16

*VNB N.Y. Corp. v. 47 Lynbrook LLC,* 2012 NY Slip Op 30207(U) (Sup. Ct.) ........................... 12

*Wiesel v. Rubinstein,* 2006 NY Slip Op 51107(U), 12 Misc. 3d 1168(A) (Sup. Ct.) ................... 12

## STATUTES

N.Y. Gen. Oblig. Law § 5-501................................................................................... 12, 16, 17, 20

N.Y. Gen. Oblig. Law § 5-703(2)................................................................................................ 14

N.Y. Real Prop. Law § 320.................................................................................................... 21, 22

NY Bank § 14-a ........................................................................................................................... 16

NY Gen Oblig Law § 5-511.......................................................................................................... 16

NY Gen Oblig Law § 5-521(1)..................................................................................................... 17

NY Penal Law § 190.40.......................................................................................................... 17, 19

## OTHER AUTHORITIES

Restatement of Judgments (Second) § 13 (1982) ........................................................................... 3

## RULES

Fed. R. Civ. P. 56......................................................................................................................... 10

Beaux Equities, LLC ("Cross-Claim Plaintiff" or the "Debtor"), the debtor and debtor-in-possession, and defendant in the above captioned adversary proceeding, by and through its attorneys, Rosen, Tsionis & Pizzo, PLLC, *f/k/a* the Law Offices of Avrum J. Rosen, PLLC, respectfully submits this memorandum of law in support of the Cross-Claim Plaintiff's motion for summary judgment, seeking the entry of an order granting summary judgment in Cross-Claim Plaintiff's favor on all cross-claims for relief asserted in Cross-Claim Plaintiff's Verified Answer[1] (the "Cross-Claims") against co-defendants, Shorivger Trust ("Shorivger" or the "Trust") and Raphael Grossman as Trustee of the Shorivger Trust (the "Shorivger Trustee" or "Raphael", and together with Shorivger, the "Cross-Claim Defendants"), on the grounds that there is no genuine issue of material fact in this matter and Cross-Claim Plaintiff is entitled to judgment as a matter of law[2].

## PRELIMINARY STATEMENT

At its core, this is a simple loan-sharking case, in which the undisputed agreements and testimony show that Shorivger, primarily through Raphael's brother Israel Grossman ("Israel"), lent the Debtor's principal Yaakov Pollak ("Yaakov") and Yaakov's brother, Moshe Pollak

---

[1] The instant motion is made solely on behalf of the Debtor and no other non-debtor parties. However, the Debtor will note that any decision rendered with respect to the Cross-Claims will likely have preclusive effect against re-litigation of the claims by and against Yaakov Pollak. *See* Adv. Proc. No. 25-01037-jmm, Dkt. No. 1, Exhibit B.

[2] Prior to removal of the instant proceeding, the Debtor and others brought a motion for summary judgment against the Cross-Claim Defendants in state court. *See Powercap Partners LLC v. Beaux Equities et al,* New York State Supreme Court, County of Kings, Index No. 524411/2017, NYSCEF Doc. No. 260. That motion was "denied on the merits due to the existence of material issues of fact." *Id.,* NYSCEF Doc. No. 418. Following removal of the action to the Bankruptcy Court, *see* 25-40119-jmm, ECF No. 31, the Court advised the parties to the proceeding that it would hear renewed motions for summary judgment with respect to the issues of (i) whether the funds at issue which were advanced by Shorivger were usurious loans under New York law; and (ii) whether the deed executed by the Debtor and purporting to convey the real properties at issue to Shorivger constitutes a mortgage under New York law. The Debtor submits that, pursuant to Second Circuit precedent, the denial of the Debtor's motion for summary judgment by the state court does not preclude the Debtor from raising the same claims herein, as the state court's decision was not "sufficiently firm to be accorded conclusive effect." *Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55, 59 (2d Cir. 1994) (quoting the Restatement of Judgments (Second) § 13 (1982)) (holding that denial of summary judgment has no preclusive effect for purposes of collateral estoppel because it is not a final judgment on the issue in dispute and cannot be appealed).

("Moshe", and together with Yaakov, the "Pollaks"), money at criminally usurious rates of interest, in violation of New York State's usury statutes.

Undisputed documentary evidence shows that the Cross-Claim Defendants charged astronomical interest rates on loans to Yaakov and YGM Group LLC ("YGM"), an entity operating in e-commerce owned by Yaakov and Moshe. The rates of interest charged began at thirty one percent per annum (31%) and were as high as one hundred twenty three percent per annum (123%), and thus illegal and in violation of New York's criminal usury statutes. From 2013 to 2017, Shorivger continued to issue these loans to YGM and/or Yaakov which were predatory, usurious, and illegal, and were designed to extort the Debtor's Properties (defined herein) by exerting pressure upon Yaakov as the Debtor's sole member. By doing so, Shorivger and its trustee coerced Yaakov to execute a deed to the Debtor's real properties as security on the loans given to YGM, of which the Debtor gained no benefit.

Cross-Claim Plaintiff seeks summary judgment on its cross-claims (i) declaring that the Deed (defined herein) executed by the Debtor and recorded by Shorivger is a mortgage and not an outright conveyance under applicable New York law; and (ii) declaring that the Shorivger Loans (defined herein) which form the basis for the  mortgage are criminally usurious and void under New York law, and as such, the mortgage and the Shorivger Loans are unenforceable against the Debtor's estate.[3]

## STATEMENT OF FACTS

### I.    Filing of Bankruptcy Petition

On January 9, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V. The Debtor

---

[3] To the extent that the Cross-Claims raise causes of action sounding in fraudulent conveyance theory, the Debtor respectfully reserves its rights to bring such claims at trial.

continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case, except that Gerard Luckman, Esq. has been appointed as the Subchapter V Trustee.

## II.    The Real Properties

The Debtor acquired the real properties commonly known as and located at 5405, 5409, and 5411 18th Avenue, Brooklyn, New York 11204 (the "Properties") by bargain and sale deed on or about September 22, 2010. A copy of the bargain and sale deed is annexed hereto as **Exhibit "A"**.

## III.    Shorivger Loaned Money to Non-Debtor Entities or Individuals in Excess of Criminal Statury Usury Rate

Yaakov and Moshe are brothers and are related to Raphael and Israel through marriage. *See Affidavit of Yaakov Pollak in Support of Beaux Equities LLC's Motion for Summary Judgment* ("Yaakov Affidavit"). A copy of the Yaakov Affidavit is annexed hereto as **Exhibit "H"**. Prior to the Petition Date, Yaakov, the sole member of the Debtor, was also a member of YGM along with Moshe.

In November 2013, Shorivger started advancing monies to Yaakov and Moshe (the "Shorivger Loans"). *See Deposition of Israel Grossman* ("Israel Depo.") *19-20*. A copy of the Israel Depo is annexed hereto as **Exhibit "B"**. The advancements were made by Israel as an authorized agent of Shorivger. *Israel Depo., 189–190.* Raphael served as the trustee of Shorivger at the time the advancements were made. *Israel Depo. 189*. Many, though not all, of the Shorivger Loans were memorialized by a series of "Heter Iskas" (the "Iska Notes"). *See Exhibit C; see also Israel Depo., 26.* Copies of the Iska Notes, as well as records of the advancements made to YGM thereunder, are annexed hereto as **Exhibit "C"**. The advancements were made to Yaakov and

Moshe through YGM. *Exhibit C*. Each of the Iska Notes identified either Shorivger or Israel as the "Investing Partner" and YGM and/or Yaakov in his individual capacity as the "Managing Partner". *Id.* The Iska Notes also identify the amount of the advance to be repaid, the date by which the advance is to be repaid, the percent of interest and the rate at which interest is payable. *Id*. The Iska Notes were signed by Yaakov at or around the time when funds were advanced to YGM. *Id.* The Debtor is not named in the "Heter Iskas" and received no benefit or consideration for the advances, which were all made directly to YGM.  *Id.* There were no written agreements or documents other than the Iska Notes pertaining to the Shorivger Loans. *Israel Depo., 158.*

It was clear to all parties from the outset that these advancements were intended to be loans. *Israel Depo., 25, 42-43, 48.*   The Shorivger Loans were intended to be short term loans, usually for three (3) or six (6) months. *Israel Depo., 35.* None of the Iska Notes had a term more than ten (10) months, with some as little as approximately one (1) month. *Exhibit C*. Of the Shorivger Loans which were memorialized by writings, at least $1,442,875.00 was advanced to YGM and/or Yaakov between November 2014 and July 2017. *Id.*  In total, Shorivger purportedly loaned YGM, Moshe and/or Yaakov in excess of $3,000,000.00 by March 2016 under the Shorivger Loans. *Israel Depo., 69.*  Certain Shorivger Loans were secured by a confession of judgment executed by Yaakov. *Israel Depo., 27-28.*

Each of the Shorivger Loans memorialized by Iska Notes carried interest rates ranging from approximately 31.4% to 123%. *Exhibit C*. Each of the Iska Notes impose base interest at 2% per month, which equates to 24% annually. *Id.*  In addition, the Iska Notes also imposed fixed interest charges in the form of loan points[4] ranging from four (4) to nine (9) points. *Id.* Some of these fixed rates were stated while others were implied by the deduction of the points from the

---

[4] "Points" mean "the payment, at the inception of the loan, of a charge equal to one percent of the principal amount of the loan in addition to interest." *In re Marfin Ready Mix Corp.*, 220 B.R. 148, 156 (Bankr. E.D.N.Y. 1998).

principal amount listed in the Iska Note. *Id.* When advancements were made by Shorivger to YGM, the points were deducted from the overall loan amount. *Id.* For example, the Iska Note dated November 18, 2014 required the repayment of the sum of $115,000.00 by YGM and Yaakov, however only $110,400.00, which equates to $115,000.00 less 4% (4 points), was advanced to YGM on account of such loan. *Id*. Below is a summary of the terms of each of the Iska Notes:

| Exhibit | Date | Principal Listed | Principal Advanced | Monthly Interest | Fixed Interest | Maturity Date | Combined Annual Interest (approx.) |
|---|---|---|---|---|---|---|---|
| C-1 | 11/4/14 | $100,000 | $96,000 | 2% | 4-Points | 1/31/15 | 40% |
| C-2 | 11/18/14 | $115,000 | $110,400 | 2% | 4-Points | 1/31/15 | 43.2% |
| C-3 | 4/17/15 | $120,000 | $140,500 | 2% | 6.33-Points | 6/30/15 | 74.6% |
|  | 4/20/15 | $30,000 |  | 2% |  | 7/30/15 | 54.4% |
| C-4 | 5/12/15 | $310,000 | $294,500 | 2% | 5-Points | 8/31/15 | 41.1% |
| C-5 | 6/11/15 | $165,000 | $150,000 | 2% | 9-Points | None listed | 33% |
| C-6 | 7/17/15 | $108,000 | $100,000 | 2% | 7.4-Points | None listed | 31.4% |
| C-7 | 8/12/15 | $29,160 | $27,000 | 2% | 7.4-Points | None listed | 31.4% |
| C-8 | 3/30/16 | $165,000 | $150,150 | 2% | 9-Points | 12/31/16 | 36% |
| C-9 | 4/28/16 | $165,000 | $150,150 | 2% | 9-Points | 12/31/16 | 37.5% |
| C-10 | 5/25/16 | $200,000 | $182,000 | 2% | 9-Points | 8/1/16 | 78% |
| C-11 | 11/17/16 | $218,000 | $200,000 | 2% | 8.25-Points | 12/20/16 | 123% |
| C-12 | 7/24/17 | $104,640 | $96,000 | 2% | 8.25-Points | 1/1/18 | 43.8% |

IV.     **Execution of the Deed to the Real Properties as Security for the Shorivger Loans**

On March 29, 2016, Yaakov, through the Debtor, executed a deed (the "Deed") purporting to transfer ownership of the Properties to Shorivger. A copy of the Deed is attached hereto as **Exhibit "D"**. At the time of execution of the Deed, Yaakov and Israel mutually agreed that the Deed was executed as security for the Shorivger Loans and was not an outright conveyance. *See Exhibits E and F.* The next day, on March 30, 2016, Yaakov signed a letter (the "Yaakov Letter"), which was prepared by Shorivger, acknowledging and memorializing the fact that the Deed was executed as security for the Shorivger Loans. *See Exhibit E*; *see also Israel Depo., 71.* A copy of

5

the Yaakov Letter is annexed hereto as **Exhibit "E"**. The Yaakov Letter specifically states as follows:

> I, Yaakov Pollak agree to transfer the Deed for 5405, 5409, 5411 18[th] Ave to Shorivinger Trust if the loan we have is not paid back by December 31, 2016. I agree to not take out an additional mortgage on these properties. The iska profits will be paid up to date by June 30,2016. I am signing on condition Mr Grossmen does not record the transfer of deed until the above date (12/31/16) & I be given written notice prior to the transfer.

*Exhibit E.*

The following day, on March 31, 2016, Israel signed a handwritten note (the "Israel Note") further acknowledging and memorializing the fact that the Deed was executed as security for the Shorivger Loans. *See Exhibit F.* A copy of the Israel Note is annexed hereto as **Exhibit "F"**. The Israel Note specifically states as follows:

> Per our agreement, I will not file the transfer Docs prior to 12/31/16. I will give Yaakov Pollak 30 days notice prior to filing transfer Docs for 5405-5409-5411 18[th] Ave. This applies if interest is up to Date by 6/30/16.

*Exhibit F.*

There are no other written agreements pertaining to the transfer of the Properties other than the Deed, the Yaakov Letter and the Israel Note, and these documents reflect the full terms of the agreement between the parties. *Israel Depo., 67.*

Contemporaneous with the execution of the Deed, Shorivger loaned YGM the amount of $165,000.00 under an Iska Note dated March 30, 2016. *Exhibit C.* Shorivger continued to loan monies to YGM and/or Yaakov subsequent to the execution of the Deed through at least July 24, 2017. *Id.* Shorivger did not record the Deed until November 29, 2017. *See Exhibit D.*

## V.       Shorivger's Proof of Claim

On April 2, 2025, Shorivger filed proof of claim no. 3 in the Debtor's bankruptcy case (the "POC"). A copy of the POC is annexed hereto as **Exhibit "G"**. The POC alleges that the Debtor is indebted to Shorivger in the amount of $2,834,567.00 on account of a claim secured by the

6

Properties. *Exhibit G*. Attached to the POC are (i) a supplement; (ii) a copy of the Deed; and (iii) a payment ledger for payments made on the Shorivger Loans/Iska Notes. *Id.*

## ARGUMENT

### I.    THE SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Bankruptcy Rule 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, a court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex*, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(c)), and reviews the evidence in the light most favorable to the non-moving party, with all inferences drawn in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular citations to the record, *Celotex*, 477 U.S. at 323; *Marvel*, 310 F.3d at 286, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment," *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018)(citation omitted). Rather, the non-moving party must point to disputed facts that would affect the outcome

of the case such that a reasonable trier of fact could find in favor of that party. *Anderson*, 477 U.S. at 247–48.

In the instant case, the Cross-Claim Plaintiff submits that there is no genuine dispute of material fact because the Plaintiff can present that (i) the Shorivger Loans made to the Debtor's principal and/or affiliated entity were usurious under New York law and are void; and (ii) the Deed was intended as security for the Shorivger Loans, and as such, is construed as a mortgage under New York law, which is unenforceable against the Debtor as it is based upon the usurious Shorivger Loans. Thus, the Cross-Claim Plaintiff asserts that there is no genuine dispute of material fact and is entitled to judgment as a matter of law on all claims for relief.

## II. THE DEBTOR IS ENTITLED TO SUMMARY JUDGMENT ON ITS FIRST CROSS-CLAIM DECLARING THE SHORIVER LOANS USURIOUS AND UNENFORCEABLE AGAINST THE DEBTOR

Based upon the undisputed facts, the Debtor is entitled to summary judgment on its first Cross-Claim[5], which seeks a determination that the Shorivger Loans were given at rates that are usurious under New York law, and as such, are unenforceable against the Debtor.

### A. The Iska Notes Were Loans and Subject to Usury Laws

Preliminarily, "[t]he rudimentary element of usury is the existence of a loan or forbearance of money." *Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM) (RER), 2010 U.S. Dist. LEXIS 140905, at *60 (E.D.N.Y. Mar. 31, 2010)(internal quotations omitted); *see also* N.Y. Gen. Oblig. Law § 5-501. In the instant matter, it simply cannot be disputed that the Iska Notes constitute loans which are subject to usury laws.

---

[5] The Debtor is not a party to the any of the Iska Notes, nor did it receive any benefit from the Iska Notes. However, by filing its POC against the Debtor, Shorivger is essentially asserting, without any basis, that the Debtor is liable alongside YGM and Yaakov for the debt incurred by the Shorivger Loans in the event that it is determined Shorivger is not the owner of the Properties. *See Exhibit C; see also Exhibit G* ("In the event it is judicially determined that the Trust is not the owner of the real property then the Trust is entitled to return of the $2,834,567.00").

A "Heter Iska" or "Hetter Isske" "was a device developed in the 12th to 14th centuries to overcome the Biblical prohibition against charging interest by one Jew to another." *Leibovici v. Rawicki,* 57 Misc. 2d 141, 144, 290 N.Y.S.2d 997, 1000 (Civ. Ct. 1968)*; see also Wiesel v. Rubinstein,* 2006 NY Slip Op 51107(U), ¶ 1, 12 Misc. 3d 1168(A), 1168A, 820 N.Y.S.2d 847, 847 (Sup. Ct.) ("Heter iska is a Talmudic doctrine which was devised to avoid the religious proscription against lending money for interest."); *see also Muller v. Wertzberger,* 2013 NY Slip Op 50915(U), ¶ 4 n.2, 39 Misc. 3d 1237(A), 1237A, 972 N.Y.S.2d 144, 144 (Sup. Ct.) (noting that the Beth Din defined the Heter Iska at issue as a "loan structured in a certain way under Jewish law that allows interest".)

"It has been held that a Hetter Iska constitutes 'merely a compliance in form with Hebraic law,' and does not create a partnership, joint venture, or profit sharing agreement." *Madison Park Inv'rs LLC v. 488-486 Lefferts LLC*, 2015 NY Slip Op 30178(U), ¶ 19 n.3 (Sup. Ct.) (quoting *Arnav Indus., Inc. v. Westside Realty Assocs.,* 180 A.D.2d 463, 464, 579 N.Y.S.2d 382, 383 (App. Div. 1st Dept. 1992). "Moreover, it has been specifically held that 'a Het[t]er Iska agreement does not alter the clear civil law terms of a note and a mortgage'" *Id.* (quoting *VNB N.Y. Corp. v. 47 Lynbrook LLC,* 2012 NY Slip Op 30207(U), ¶ 5 (Sup. Ct.)).

The Shorivger Loans, to the extent they were memorialized in writing, were supported by the Iska Notes annexed hereto. Under New York precedent, the Iska Notes unquestionably constitute loan agreements and did not create any type of business venture. Further, by his sworn testimony in this proceeding, Israel admitted on multiple occasions that the intent of advancing funds to the parties between 2013 and 2016 began as "short-term loans" *Israel Depo., 25, 42-43, 48*. At certain times in his testimony, Israel attempted to walk back his description of the

9

advancements as "loans" and asserted that such payments were in support of purchasing the

Properties. *Israel Depo., 50.*

> **Q.** Some time between 2013 and 2016, the loans that were intended to assist the Amazon business were converted into purchase funds for the property; is that correct?
> **A.** Pretty soon, because these loans were all supposed to be short-term loans for Amazon. That's all we agreed to. And it turned out to be just monies that he didn't pay, and we considered that every time he gave us his handwritten signature, it was just confirming how much we paid so far, until the point where we paid enough to acquire the property.
> **Q.** Did Shorivger Trust enter into any contract, purchase sale agreement, contract of sale, or any other contract memorializing the agreement to sell the property?
> **A.** No. The deed was certainly -- the deed gave us actual title based on what we paid.
>
> *        *        *
>
> **Q.** How much was paid?
> **A**. Probably about in the area of at least $2 million.
> **Q**. Those are all in the form of the loans that we have been discussing until now to YGM, or was it in some other form?
> **A**. It wasn't loans. It was a series of payments that applied to the purchase price.
> **Q**. They certainly started out as loans; correct?
> **A**. No. I mean, they were short-term loans, but when the short term, which expired years ago, expired, it give us a -- what do you call it -- confession of judgment, and we knew that this is the purchase of property.

*Israel Depo., 48-50.*

A review of Israel's testimony reflects these repeated statements that the advancements were indeed loans, followed by the baseless assertion that the advancements were for the Properties. *Israel Depo.* Further, contemporaneous emails between Israel and Yaakov at or around the time of the execution of the April 17, 2015 Iska Note entirely reject the Cross-Claim Defendants' contention. A copy of the email exchange is annexed hereto as **Exhibit "I"**. In an email chain with the subject line "Loans spreadsheet", Israel[6] wrote to Yaakov that:

> We arranged for signifcant amount that will be available early next week If it is an emergency we can, bli neder, get you 100 today. We need to have the iska as agreed for the net of 5 points and 2%

---

[6] Israel confirmed in his deposition that psol@verizon.net is his primary email address. *See Israel Depo., 211.*

*Exhibit I.*

There was clearly no "understanding" between the parties that the advancements were for the purchase of the Properties. Even if there was, the agreement was never reduced to writing in a form that would satisfy the statute of frauds. *See* N.Y. Gen. Oblig. Law § 5-703(2). (The New York statute of frauds provides that "[a] contract . . . for the sale[] of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.")

By Israel's own testimony, there was no written agreement of any kind which purported to advance the funds under the Iska Notes as installments for the purchase of the Property, especially none that was charged against the Debtor. *Israel Depo, 67, 158.*   The terms of the Deed, by itself, are insufficient to satisfy the statute of frauds as it does not contain any description of necessary terms for the sale, including the purchase price, monies previously advanced, or any further payment schedule. *Exhibit D*. Moreover, the only documents which were executed by the parties were the Deed, the Yaakov Letter, and the Israel Note. *Israel Depo, 67.* The Yaakov Letter and the Israel Note can only be read with one understanding – that the Deed being executed was solely for the purpose of serving as security for the Shorivger Loans. *Exhibit E; Exhibit F*.

In sum, there can be no question of fact as to whether the funds advanced to the parties herein were loans as there is no rational basis to conclude otherwise based upon the undisputed factual history herein. As such, the Court should find that the Shorivger Loans were in fact loans and therefore are subject to usury laws.

**B. <u>The Shorivger Loans Charged Interest Rates in Excess of New York's Criminal Usury Rate</u>**

Being subject to the usury laws of New York, it is undisputed that the terms of the Shorivger Loans, as memorialized by the Iska Notes, are violative of New York laws prohibiting the charging of excessive interest. New York has a staunch public policy against usury. *See e.g. United States v. Moseley*, 980 F.3d 9, 21 (2d Cir. 2020) ("New York judicial opinions have consistently recognized the state's prohibition of excessive interest rates as embodying a fundamental public policy.") "[]New York usury statutes are a deeply rooted tradition designed to protect *both individuals and corporations*—especially insecure businesses in need of financial assistance— from the 'evils of usury.'" *See Samson Lending LLC v. Greenfield Mgmt. LLC*, 80 Misc. 3d 1023, 1027, 196 N.Y.S.3d 850, 853 (Sup. Ct. 2023)(emphasis added).

Pursuant to NY Gen Oblig § 5-511:

> All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, shall be void.

NY Gen Oblig § 5-511.

The maximum interest rate chargeable under NY Gen Oblig § 5-501 is sixteen percent (16%) per annum, subject to certain exceptions which are not applicable herein. *See* NY Gen Oblig § 5-501; *see also* NY Bank § 14-a. Each of the Iska Notes herein charge at minimum, interest of 2% per month, which equate to interest of at least 24% per annum. *See Exhibit C.* That is not even accounting for the fixed interest points which are either stated or implied by the Iska Notes. *See Band Realty Co. v. N. Brewster, Inc.,* 37 N.Y.2d 460, 464, 373 N.Y.S.2d 97, 100, 335 N.E.2d 316, 319 (1975) (holding that, under the "traditional method" of computing interest, a fixed "discount" deducted from the principal at the time the loan is made constitutes interest for purposes of

12

determining if transaction is usurious.); *see also Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,* 652 F. Supp. 101, 104 (E.D.N.Y. 1986) ("…the difference between the face amount of the obligation…and the sum actually received…is added to the interest permitted by law upon the sum actually received…to determine whether the loan is usurious.")

Further, the exception provided for under NY Gen Oblig § 5-501(6) is inapplicable herein, because none of the loans to Yaakov individually were for more than $250,000.00, and there were no written agreement between the parties deeming the Iska Notes to be part of a singular loan. *See* NY Gen Oblig § 5-501(6). Therefore, to the extent certain Iska Notes are executed by Yaakov in his individual capacity as the lender or co-lender with YGM[7], on their faces these Iska Notes carry interest in excess of the civil usury rate of 16% and are void as to Yaakov.

As to the Debtor, under NY Gen Oblig § 5-521(1), a corporation may not generally assert a claim of usury, however, a corporation may assert a *defense* of criminal usury as provided for in NY Penal § 190.40. NY Gen Oblig § 5-521(1); *see also K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 2017 NY Slip Op 27166, ¶ 4, 56 Misc. 3d 807, 815, 57 N.Y.S.3d 625, 631 (Sup. Ct.)("It has long been settled in this state that criminal usury may only be asserted as a defense by a corporation, and never as a means to seek affirmative relief.")

Therefore, the Debtor may assert a *defense* of usury against Shorivger as to the Iska Notes, which, as described herein, charge annual interest at rates between 31.4% and 123%, unquestionably in excess of the criminal usury rate of 25%. Here, Shorivger has filed its proof of claim, and by doing so, has submitted itself to the jurisdiction of this Court to adjudicate the claim. *See e.g. Richmond Hospitality LLC v. Shaugnessy Capital LLC (In re Richmond Hospitality LLC)*, Adv. Proc. No. 24-01057-jmm, Dkt. No. 15 (Bankr. EDNY January 14, 2025) (Mazer-Marino, J.);

---

[7] Specifically, the Iska Notes which name Yaakov in his individual capacity are the Iska Notes dated November 4, 2014, November 18, 2014, April 20, 2015, April 28, 2016, May 25, 2016, November 17, 2016, and July 24, 2017.

*see also Langenkamp v. Culp,* 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power.")[8]

The Debtor's Cross-Claims in this removed action, which seek a determination that the Shorivger Loans are usurious and unenforceable against the Debtor, essentially serve as an objection to the POC. As this Court has held:

> Once a proof of claim is filed, the debtor and all parties in interest may object to the proof of claim, including objecting on the grounds that the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Generally, the claims resolution process occurs in the Bankruptcy Court, even if the claims against the debtor are the subject of state court actions that were pending at the time the bankruptcy case was filed and those actions were not removed to the bankruptcy court.

*Id.*

Further, "[i]n the bankruptcy context, a proof of claim filed by a creditor is conceptually analogous to a civil complaint, an objection to the claim is akin to an answer or defense and an adversary proceeding initiated against the creditor that filed the proof of claim is like a counterclaim." *Cruisephone, Inc. v. Cruise Ships Catering & Servs. N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 330 (Bankr. E.D.N.Y. 2002) (Feller, J.). As such, this Court should find that the Debtor's Cross-Claim as to usury is properly raised as a defense under New York law as a determination by this Court on the issue would resolve the POC.

"Criminal usury requires proof that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance." *In re Venture Mortg. Fund, L.P.*, 245 B.R. 460, 473 (Bankr. S.D.N.Y. 2000); *see also* NY Penal § 190.40. "The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent

---

[8] Simultaneous with the instant motion, the Debtor intends to object to Shorivger's POC pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 and reserves its right to do so.

to violate the usury statute." *Id.* at 473-474. "If usury is proved, the loan is deemed void, and the lender sacrifices his principal and interest." *Id.* at 474; *see also Adar Bays, LLC v. GeneSYS ID, Inc.*, at 333 ("The statutory authority, coupled with the legislative intent behind the 1965 amendment, requires the conclusion that the legislature intended for criminally usurious loans made to corporate borrowers to be void when a successful usury defense, based on the criminal usury rate, is raised.").

It is clear from the face of the Iska Notes that Shorivger intended to charge interest at rates in excess of 25%, whether or not it was received. The Iska Notes each carry a minimum monthly interest rate of 2%, which equates to 24% annually. *Exhibit C*. In addition, each of the Iska Notes charge fixed interest, whether explicitly stated or implied by the difference between the amount to be repaid under the Iska Notes and the amount advanced on account of the Iska Notes. *Id.*; *see also Band Realty Co.,* 37 N.Y.2d 460; *Durante Bros.,* 652 F. Supp. 101. For example, the Iska Note dated May 12, 2015 required repayment of $310,000.00 on account of the Iska Note by August 31, 2015, which is essentially a term of three and a half (3.5) months. The May 12, 2015 Iska Note by its terms charged interest of 2% per month, however, in addition to that, the Debtor was charged 5 points of fixed interest, which is implied by only $294,500.00 being advanced[9]. Since the term is approximately 3.5 months for the May 12, 2015 Iska Note (from May 12, 2015 to August 31, 2015), the fixed interest equates to roughly 17.1% when computed on an annual basis[10], which is in addition to the previously mentioned 24%.

---

[9] $294,500.00 subtracted from $310,000.00 equals $15,500.00. By dividing $310,000.00 by $15,500.00, it can be deduced that $15,500.00 is 5% of $310,000.00.
[10] By dividing 12 (months) by 3.5 (approx.. month term) and then multiplying by 5 (the fixed interest rate), it can be deduced that the fixed interest rate is approximately 17.1% per annum.

Lastly, the Debtor submits that the exceptions provided for by NY Gen Oblig § 5-501(6) are inapplicable herein, as there is no written agreement between the parties that deem the numerous Iska Notes to be part of a singular loan. *See* NY Gen Oblig § 5-501(6).

In sum, there can be no genuine dispute that Shorivger fully intended to charge annual interest exceeding 25% on the Shorivger Loans, and that intent is clear from the face of the Iska Notes and the implied fixed interest rates charged when monies were advanced. Therefore, it cannot be disputed that the Shorivger Loans charge interest at a rate in excess of the criminal usury statute and under New York law, and the Court should find that such loans are void and unenforceable against the Debtor.

III. **THE DEBTOR IS ENTITLED TO SUMMARY JUDGMENT ON ITS SECOND CROSS-CLAIM DECLARING THE DEED TO SHORIVGER IS A MORTGAGE, AND FINDING THAT MORTGAGE IS UNENFORCEABLE AGAINST THE DEBTOR AS IT WAS TAKEN AS <u>SECURITY FOR THE SHORIVGER LOANS</u>**

As described already herein, there can be no serious dispute as to the purpose of the Deed. Pursuant to the Yaakov Letter and Israel Note, both of which were executed within days following execution of the Deed, there was a clear mutual understanding that the Deed was being given as security for the Shorivger Loans and was not intended as a contemporaneous conveyance of the Properties. *See Exhibit E* ("I, Yaakov Pollak agree to transfer the Deed for 5405, 5409, 5411 18[th] Ave to Shorivinger Trust if the loan we have is not paid back by December 31, 2016."); *see also Exhibit F* ("Per our agreement, I will not file the transfer Docs prior to 12/31/16.")

Under section 320 of the New York Real Property Law,

> [a] deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage; and the person for whose benefit such deed is made, derives no advantage from the recording thereof unless every writing, operating as a defeasance

16

of the same, or explanatory of its being desired to have the effect only of a mortgage, or conditional deed, is also recorded therewith, and at the same time.

N.Y. Real Prop. Law § 320

"On its face, section 320 mandates that '[a] deed conveying real property will be considered to be a mortgage when the instrument is executed as security for a debt.'" *Edge Capital, LLC v. JA Funding, Inc. (In re 364 N.B.E. Corp.),* Nos. 13-46771 (NHL), 13-01517 (NHL), 2015 Bankr. LEXIS 4367, at *8 (Bankr. E.D.N.Y. Dec. 29, 2015) (Lord, J.), quoting *Basile v. Erhal Holding Corp.*, 148 A.D.2d 484, 485-86, 538 N.Y.S.2d 831 (N.Y. App. Div. 2d Dep't 1989). "Significantly, the statute does not require a conclusive showing that the transfer was intended as security; it is sufficient that the conveyance 'appears to be' intended only as a security in the nature of a mortgage." *Leonia Bank v. Kouri*, 3 A.D.3d 213, 217, 772 N.Y.S.2d 251 (N.Y. App. Div. 1st Dep't 2004); *see also In re 364 N.B.E. Corp.,* 2015 Bankr. LEXIS 4367, at *8 ("An instrument's purpose may be gleaned from a review of the document *and any concurrently executed written agreements*, as well as live testimony and the *circumstances surrounding the parties' actions*.")(emphasis added).

It is evident from the concurrent written document executed by Yaakov (which was not recorded with the Deed in direct contravention of the statute) that the transfer of the Properties was contingent on the loan not being paid back by December 31, 2016, *ie.* as security on the loans. *Exhibit E*. It is further clear that such transfer of the Properties was made in connection with the Iska Notes between Shorivger and YMG/Yaakov. *Id.* ("The *iska profits* will be paid up to date by June 30,2016.")(emphasis added).  In addition, Israel confirmed such agreement by executing his own concurrent written document, stating that he would not file the deed prior to December 31, 2016, on the condition that the Debtor was current with payments under the

17

Shorivger Loans. *Exhibit F* ("This applies if *interest* is up to Date by 6/30/16.")(emphasis added).

It is also uncontroverted that none of these documents were recorded along with the Deed, which has been a strict requirement of N.Y. Real Prop. Law § 320 for over a century. *In re Mechanics' Bank*, 156 A.D. 343, 347, 141 N.Y.S. 473, 476 (App. Div. 2nd Dept. 1913) ("If [the] deed is in fact a mortgage and there is a separate instrument of defeasance, the recording of it as a deed without at the same time recording every writing operating as a defeasance or explanatory thereof, is a nullity so far as giving constructive notice to subsequent purchasers or incumbrancers is concerned.") Furthermore, the Deed was not recorded for over a year and a half after the Deed was executed, further evidencing by Shorivger's actions that it intended to take the Properties as a security instrument and not an outright conveyance at the time of execution of the Deed. *Exhibit D.*

Simply put, it is clear under black letter New York law and the accompanying documentation and surrounding circumstances, that the sole purpose of the Deed was as security for the Iska Notes executed between Shorivger and YMG/Yaakov. As previously described, the Debtor was not party to the Shorivger Loans, was not named under the Iska Notes, and received zero consideration or other pecuniary benefit by way of the cash advances to YMG. Further, and as described herein, there was no underlying consideration for the mortgages as there was no note or guarantee signed by the Debtor nor funds received by the Debtor. *Coronet Capital Co. v. Spodek*, 265 A.D.2d 292, 292, 696 N.Y.S.2d 191, 192 (App. Div. 2nd Dept. 1999) ("It has long been held that a mortgage is not valid and enforceable unless there is an underlying valid debt or obligation for which the mortgage is intended as security"). Lastly, as discussed herein, any

18

testimony as to the Shorivger Loans being for the purchase of the Properties is barred by the statute of frauds.

Therefore, based upon the above, the Court should find the facts undisputed that the Deed is actually a mortgage under New York law, and because that mortgage is based upon the granting of loans at criminally usurious rates to the Debtor's principal and affiliate, is unenforceable against the Debtor.

## CONCLUSION

The Cross-Claim Plaintiff asserts that based upon the undisputed facts in this action as more fully set forth in the accompanying Rule 7056-1 statement, and based upon the above legal arguments, Cross-Claim Plaintiff is entitled to summary judgment against the Cross-Claim Defendants (i) declaring that the Deed executed by the Debtor and recorded by Shorivger is a mortgage and not an outright conveyance under applicable New York law; and (ii) declaring that the Shorivger Loans which form the basis for the Properties' mortgage are criminally usurious and void under New York law, and as such, the mortgage and the Shorivger Loans are unenforceable against the Debtor's estate.

Dated: Huntington, New York
      July 16, 2025

Respectfully submitted,

**Rosen, Tsionis & Pizzo, PLLC**
**_f/k/a_ Law Offices of Avrum J. Rosen, PLLC**
_Attorneys for the Debtor, Beaux Equities LLC_

BY:    _/s/ Avrum J. Rosen_
       Avrum J. Rosen, Esq.
       Daniel J. LeBrun, Esq.
       38 New Street
       Huntington, New York 11743
       (631) 423-8527
       arosen@ajrlawny.com
       dlebrun@ajrlawny.com